1   William G. Fig, WSBA 33943
    wfig@sussmanshank.com
2   SUSSMAN SHANK LLP
    1000 SW Broadway, Suite 1400
3   Portland, OR 97205
    Telephone: (503) 227-1111
4   Facsimile: (503) 248-0130

5   Attorneys for Green Tree Servicing LLC

6

7

8                IN THE UNITED STATES DISTRICT COURT

9            FOR THE WESTERN DISTRICT OF WASHINGTON
                          SEATTLE DIVISION
10

11  MICHAEL THOMAS,                    )  Case No. 2:15-cv-01309-RSL
                                       )
12                        Plaintiff,   )
           vs.                         )  GREEN TREE SERVICING LLC'S
13                                     )  MOTIONS FOR SUMMARY JUDGMENT
                                       )
14  FLAGSTAR BANK, NA and GREEN TREE   )  **NOTED FOR: JUNE 9, 2017**
    SERVICING LLC,                     )
15                                     )
                          Defendants.  )
16  _____)

17                    **I.    MOTIONS**

18        Pursuant to Federal Rule of Civil Procedure ("FRCP") 56, Green Tree Servicing

19  LLC ("Green Tree") moves the court for an Order dismissing each one of plaintiff Michael

20  Thomas's ("Plaintiff") claims against it, with prejudice, based on the following grounds:

21        1.    Plaintiff's breach of contract claim fails as a matter of law;

22        2.    Plaintiff's negligent misrepresentation claim fails as a matter of law;

23        3.    Plaintiff's claims for alleged violations of the Washington Consumer

24  Protection Act ("CPA") fail because Plaintiff cannot prove that:

25              a.    Green Tree acted unfairly or deceptively toward Plaintiff;

26

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1             b.      Green Tree's actions (or inactions) were the "but for" cause of his

2 alleged damages;

3         4.      Plaintiff cannot seek emotional distress damages for breach of contract or

4 for an alleged violation of the CPA; and

5         5.      Plaintiff cannot seek costs of suit as damages.

6                  **II.      POINTS AND AUTHORITIES**

7 **A.     STATEMENT OF FACTS AND CASE HISTORY**

8        Plaintiff and his wife, Velma Thomas, own a residence located in King County,

9 Washington ("Property"). Complaint, ¶ 2. Plaintiff and Mrs. Thomas are both borrowers

10 on the promissory note to repay the funds used to finance their purchase of the Property

11 ("the Loan"), and both executed the deed of trust recorded against the Property to secure

12 the note. Declaration of Christy Christenson ("Christensen Decl."), ¶ 3. Federal Home

13 Loan Mortgage Corporation ("Freddie Mac") is the investor that owns the Loan. *Id.* at ¶ 9.

14 In 2012, Plaintiff encountered financial difficulties and fell behind on payments owed on

15 the Loan. Plaintiff engaged in the state-provided Foreclosure Fairness Mediation ("FFM")

16 process with Flagstar Bank ("Flagstar"), the servicer of the Loan. Plaintiff alleges that, in

17 October 2012, he was offered a trial payment period by Flagstar. Complaint, ¶ 10.

18 Although Plaintiff claims he completed the trial payment period ("TPP"), Plaintiff did not

19 obtain a permanent modification from Flagstar. *See* Christensen Decl., ¶ 9. Flagstar has

20 been dismissed from this action, and Plaintiff asserts no claims against Green Tree based

21 on the Flagstar TPP. *See* Dkt. No. 16; *see also* Declaration of William G. Fig ("Fig Decl."),

22 ¶ 3, Ex. 1, Deposition Transcript of Michael Thomas ("Thomas Depo."), 41:21-42:5.

23        In January 2014, Green Tree became the servicer of the Loan. *Id.* at ¶ 10. Plaintiff

24 continued the foreclosure mediation process with Green Tree and applied for a loan

25 modification with Green Tree. *Id.* at ¶ 11. On August 6, 2014, Green Tree offered Plaintiff

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   and Mrs. Thomas a conditional trial period plan.  *Id.*, ¶ 11, Ex. 2.  The August 6 letter was

2   specifically identified as the "first step" toward receiving a permanent modification and

3   identified several subsequent criteria that needed to be met before the Loan would be

4   permanently modified.   Plaintiff knew he had to meet other applicable qualification

5   requirements before his Loan would be permanently modified.  Thomas Depo., 81:15-21.

6         There is no dispute that Plaintiff successfully made the trial period payments.  As

7   set forth in the August 6 letter, the Loan was then reviewed to determine if the applicable

8   qualifications under the Freddie Mac guidelines were met, which set the criteria governing

9   whether the Loan could be permanently modified.

10        The Freddie Mac Guidelines, B65.20, 1(b), provide in pertinent part:

11        "The Mortgage, when modified, must meet the following conditions.

12        The modified Mortgage must:

13        1.  Retain its First Lien position and be fully enforceable.  The modification
            agreement must be executed by the Borrower(s) and must be in

14          recordable form in the following circumstances:…

15        **Notwithstanding the foregoing**, to ensure the First Lien position the
          Servicer Must:

16

17        …

18        (b) Obtain a title endorsement or similar title insurance product issued by a
          title insurance company to ensure that the modified Mortgage retains first

19        lien priority, if (1) the amount capitalized is greater than $50,000 (aggregate
          capitalized amount of all modifications of the Mortgage completed under

          Freddie Mac's loan modification workout option), or (2) the modified interest

20        rate is greater than the interest rate currently in effect on the mortgage.

21        …"

22        Fig Decl., ¶ 4, Ex. 2 (Deposition transcript for Clay Hamilton ("Hamilton Depo."),

23   26:6-23, Ex. 42 at p. 1 (GT-05446)), emphasis added.

24        Because this was a Freddie Mac loan, and the amount of the loan being modified

25   was over $50,000, one of the applicable qualification requirements is that Green Tree

26

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    must be able to obtain title insurance to ensure that the resulting modified mortgage lien

2    retains a first lien priority position.  Hamilton Depo., 26:6-25; 27:21-25; 28:1-14 , Ex. 42,

3    p. 1.

4           In December 2014, Green Tree notified Plaintiff that there may be title issues with

5    the Property and, because Plaintiff has a common name (Michael Thomas), the title

6    insurance company required that Plaintiff provide certain information to prove his identity

7    for purposes of verifying encumbrances against the real property.  Christensen Decl.,

8    ¶ 12.  The "common name" issue was resolved by Plaintiff providing the paperwork to

9    clear up the common name issue.  *Id.*

10          With Freddie Mac loans, Green Tree's usual practice is to pull a title report during

11    the beginning of the TPP period, and after the TPP payments, but before a final

12    modification offer was made.  Hamilton Depo., 19:13-20.  On January 16, 2015, Green

13    Tree obtained a title report regarding the Property.  Christensen Decl., ¶ 13, Exhibit 3.

14    The title report showed several federal tax liens recorded against the Property.  *Id.*;

15    Hamilton Depo., 29:1-24, Exhibit 11.  The title company required the removal of the tax

16    lien encumbrances before it would issue title insurance.  *Id.*; Christensen Decl., ¶13,

17    Exhibit 3.[1]

18          Because of Freddie Mac's guidelines, Green Tree could not offer a final

19    modification to Plaintiff with the tax liens against the Property.  Hamilton Depo., 22:17-25;

20    23:1-7.  Plaintiff, upon being informed of the liens, simply denied they were his.  Hamilton

21    Depo., 17:25-18:8, Ex. 41 at GT 05531. (Comments: the mediator found "Ultimately,

22    permanent modification was denied because in the course of the mediation, due

23    diligence, they found three IRS tax liens amounting to more than $100,000. Borrower

24    denied that the liens belonged to him or his wife.")   As a result, Plaintiff was told at the

25

26  _____

[1]*See also* Fig Decl., ¶ 5, Ex. 3, Deposition Transcript of Christy Christensen ("Christensen Depo."), 118:25 -119:8, Ex. 11.

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 4

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    mediation that his loan modification was denied, which was memorialized in a January 23,

2    2015 letter from Green Tree to Plaintiff.  Id.; Christensen Decl., ¶ 14, Ex. 5.[2]

3         Plaintiff later, however, admitted that the tax liens did, in fact, relate to him.

4    Thomas Depo., 42:6-46:23 and 44:13-46:23, Ex. 6.[3]  As Plaintiff testified: "Well, I learned

5    that I got to pay for that.  There was some tax liens on me…"  "Well, I mean, they sent me

6    some property tax – basically, what some of this stuff is something that the federal – we

7    want to call it the federal government, but it's the – 941 taxes is …"  Thomas Depo., 45:20-

8    46:23, Ex. 6.  In other words, at Plaintiff's deposition in June 2016, he explained that the

9    federal tax liens that showed on the title report in January 2015 were based on his

10   individual liability to the IRS for Trust Fund Taxes relating to his failed painting business.

11        Plaintiff filed this suit in July 2015.  *See* Dkt. No. 1-1.  Plaintiff alleges **only three**

12   **claims** against Green Tree: (1) that Green Tree breached an agreement with Plaintiff that

13   if he made three trial period payments, Green Tree would automatically modify Plaintiff's

14   loan; (2) that Green Tree violated the Washington Consumer Protection Act by not

15   permanently modifying Plaintiff's loan and by considering the non-modified loan in default;

16   and (3) that Green Tree negligently misrepresented to Plaintiff that it would offer Plaintiff

17   a permanent loan modification.  Plaintiff does **NOT** make any claims that Green Tree

18   should have assisted with addressing the tax liens, nor does Plaintiff make any allegations

19   that Green Tree should have performed some type of due diligence before offering

20   Plaintiff a TPP in the first place.  Green Tree moves for summary judgment on the three

21   claims before this court.

22   / / /

23   / / /

24   _____

25   [2] *See also*, Thomas Depo., 111:24-112:8, Ex. 22.

26   [3] While Plaintiff disagrees that the federal government is allowed to lien his residence
     based on a debt related to his operation of his former limited liability company, Plaintiff
     admits that the bills related to the tax lien arose from his operation of his limited liability
     company and were liens against "him."

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   **B.    AUTHORITIES AND ARGUMENT**

2        **1.    Motion for Summary Judgment Standard.**

3        "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

4   adequate time for discovery and upon motion, against a party who fails to make a showing

5   sufficient to establish the existence of an element essential to that party's case, and on

6   which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

7   317, 322 (1986).   Washington courts follow the *Celotex* summary judgment standard.

8   *See Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216 (1989).   A motion for summary

9   judgment should be granted if there is no genuine issue of material fact, or if reasonable

10  minds could reach only one conclusion on that issue based upon the evidence construed

11  in the light most favorable to the nonmoving party.  *Weatherbee v. Gustafson*, 64 Wash.

12  App. 128, 131 (1992).

13       **2.    Plaintiff's Breach of Contract Claim Fails.**

14            a.    <u>Elements of an enforceable contract.</u>

15       In any breach of contract action, the first question the court must answer is whether

16  an enforceable contract has been created.  *Storti v. Univ. of Wash.*, 330 P.3d 159, 163

17  (2014). The elements of an enforceable contract are offer, acceptance, and consideration.

18  *Id.*  An offer must evidence an intent to be bound by the terms of a proposal.  *Id.*  The

19  offeror may prescribe the manner in which acceptance of the offer must be made.  *Corbit*

20  *v. J. I. Case Co.*, 424 P.2d 290, 299 (1967); *see also* CORBIN ON CONTRACTS § 88, at

21  136 (1952) ("The offeror creates the power of acceptance; and he has full control over

22  the character and extent of the power that he creates.")   An offer may be revoked by the

23  offeror at any time prior to acceptance.  *Reg'l Transit Auth. v. Heirs & Devisees*, 144 P.3d

24  322, 325 (2006).

25  / / /

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1          b.    <u>No Contract Requiring Green Tree to Permanently Modify the Loan.</u>

2        Plaintiff's breach of contract claim is predicated on the incorrect contention that

3    making the three trial period plan payments was the only condition to Plaintiff's receipt of

4    the permanent loan modification.  Nothing in the August 6, 2014 letter states that if Plaintiff

5    makes the three trial period payments, the Loan will be automatically permanently

6    modified.  Indeed, the August 6 letter identifies the payments as a "first step" in the

7    process of obtaining a permanent modification and sets forth multiple other requirements

8    that must be satisfied before the Loan will be deemed permanently modified.

9        The August 6 letter states in pertinent part:

10   "Next Steps

11   - It is important that you thoroughly review the *Frequently Asked*

12       *Questions* and *Additional Trial Period Plan Information and Legal Notices* information attached.

13   - Once you have successfully made each of the payments above by

14       their due dates, you have submitted two signed copies of your modification agreement, we have signed the modification

15       agreement, <u>and you have met any other applicable qualification requirements,</u> your mortgage will be permanently modified in

16       accordance with the terms of your modification agreement."
     ...

17   "Frequently Asked Questions…

18   …

19   **Q:   When will I know if my account can be modified permanently and how will the modified account balance be determined?**
     <u>As long as you have met all of the applicable qualification requirements,</u>

20   once you make all of your trial period payments on time and return to us two copies of a modification agreement with your signature, we will sign one

21   copy and send it back to you so that you will have a fully executed modification agreement detailing the terms of the modified account."

22   Christensen Decl., Ex. 4, underline emphasis added.

23       Accordingly, the August 6 letter expressly provides that making the trial period

24   payments is not enough.  Rather, in order to obtain a permanent loan modification,

25   Plaintiff was also required to meet all of the applicable qualification requirements.

26

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 7

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Here, because the Loan is a Freddie Mac loan for over $50,000, one of the applicable qualification requirements is that Green Tree must be able to obtain title insurance to ensure that the resulting modified mortgage lien retains a first lien priority position.  Hamilton Depo., 26:6-23; 27:21-25; 28:1-14 , Ex. 42, p. 1.  Indeed, the relevant Freddie Mac Guidelines, § B65.20, 1(b), required in pertinent part:

"The Mortgage, when modified, must meet the following conditions.

The modified Mortgage must:

…, to ensure the First Lien position the Servicer Must:

…

(b) Obtain a title endorsement or similar title insurance product issued by a title insurance company to ensure that the modified Mortgage retains first lien priority, if (1) the amount capitalized is greater than $50,000 (…. …"[4]  *Id.* (Emphasis added).

In this case, after Plaintiff made the TPP payments, and before executing a permanent loan modification offer, Green Tree obtained a title report to ensure that there were not encumbrances against the Property that may jeopardize the first priority position of any recorded loan modification agreement.  Christensen Decl., ¶ 13, Exhibit 3.  The January 2015 title report obtained by Green Tree showed several tax liens recorded against the Property.  *Id.*; Hamilton Depo., 29:1-24, Exhibit 11.  Plaintiff knew of the tax liens, but, rather than take action to remove them, he simply denied the liens were his.  Hamilton Depo., 17:25-18:8, Ex. 41 at GT-05531.  As a result, title insurance (or a title endorsement to the original title insurance policy) could not be obtained, and the permanent loan modification agreement was denied.  Hamilton Depo., 22:17-25; 23:1-7; 26:6-23; 27:21-25; 28:1-14 , Ex. 42, p. 1; Christensen Depo., 119:17-19.  Indeed, Green Tree was wise not to simply rely on Plaintiff's denial of the liens as Plaintiff later admitted

---

[4] There is no practical difference between obtaining a title endorsement or new title insurance policy for purposes of this provision.  Either way, the title company must affirm the first place lien position and issue title insurance for that position.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    that the tax liens were related to his failed construction business.  *See* Thomas Depo.,

2    42:6-46:23, Ex. 6.

3         Plaintiff will likely argue this case is like *Corvello v. Wells Fargo*, 728 F.3d 878 (9th

4    Cir. 2013)[5]; it is not.  In *Corvello*, the servicer, Wells Fargo, without any explanation, failed

5    to offer the borrower a permanent loan modification after the borrower made the TPP

6    payments.  *Id.* at 882 ("according to the complaint, never told Corvello whether he

7    qualified for a modification. Corvello alleges he complied with the TPP's terms, and made

8    all three payments on time. Wells Fargo still never offered him a permanent modification,

9    nor did it notify him that he did not qualify.")  The court rejected Wells Fargo's argument

10   that it was not obligated to offer a permanent modification agreement because no

11   modification agreement had been signed by both it and the borrower.  *Id.* at 883-884.

12   Importantly, Wells Fargo's TPP offer letter to Corvello stated "If I am in compliance with

13   this Loan Trial Period and my representations in Section 1 continue to be true in all

14   material respects, then the Lender <u>will</u> provide me with a Loan Modification Agreement."

15   *Id.* at 881, emphasis added.  Equally as important, the *Corvello* court stated that a "* * *

16   TPP gives the bank a chance, after borrowers submit the completed TPP, to notify them

17   if they do not qualify."  *Id.* at 884-885.

18        Thus, *Corvello* does <u>not</u> hold that the borrower is entitled to a permanent

19   modification if he makes the TPP payments.  The court simply held that the borrower had

20   alleged a claim sufficient to survive an FRCP 12(b) motion because of the unconditional

21   language in the Wells Fargo TPP letter.  In contrast, here, <u>as Plaintiff admitted</u>, obtaining

22   a permanent loan modification required more than just making the TPP payments.

23   Thomas Depo., 81:15-21.

24        As discussed above, Green Tree's August 6 letter was qualified as "the first step."

25   It did not state the Loan would be modified if the TPP payments were made.  Moreover,

26   
_____

[5] *Corvello* was a review of a Rule 12(b)(6) Motion to Dismiss, so the borrower's allegations
were accepted as true.  *Id.* at 885.

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 9

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  the FFA mediator's report shows that Plaintiff was given a reason why a permanent

2  modification was not offered after he made the TPP payments – *i.e.* Plaintiff's property

3  was encumbered by tax liens thereby preventing Green Tree from obtaining the title

4  insurance policy required by the Freddie Mac guidelines.  Plaintiff was not entitled to a

5  permanent loan modification under the terms of the August 6 letter simply because he

6  made the three TPP payments and, therefore, his breach of contract claim, based on that

7  letter, fails.

8              c.       No Claim for Breach of Servicing Guidelines.

9       Plaintiff may argue that Green Tree, under the Freddie Mac guidelines, had an

10  obligation to Plaintiff to obtain a subordination agreement from the federal government

11  for the federal tax liens.[6]  Since Plaintiff is not a party to the servicing guidelines between

12  Green Tree and Freddie Mac, Plaintiff essentially claims he is a third-party beneficiary of

13  the Freddie Mac servicing guidelines and, therefore, can enforce them against Green

14  Tree.  Plaintiff's argument is without merit.

15      This Court has already rejected Plaintiff's argument in *Tran v. Bank of America,*

16  *N.A.*, 2012 U.S. Dist. Lexis 157165.  In *Tran*, a borrower argued that the servicer breached

17  its contractual agreement with the federal government concerning the HAMP program by

18  failing to stop the foreclosure process against the borrower.  The court held, "There is no

19  private right of action by a homeowner to enforce the provisions of HAMP.  Neither the

20  Emergency Economic Stabilization Act, which created HAMP, nor HAMP's guidelines

21  create 'a property interest in loan modifications for mortgages in default.  In short, there

22  is no private right of action created under HAMP…"  *Tran, supra*, at p. 12.

23      This Court is not alone.  Indeed, "the federal courts have uniformly concluded, to

24  the extent that the [FNMA and Freddie Mac] servicing guidelines can be read as creating

25

26  [6] B.65.20 1(c) states "Obtain subordination agreements from junior lienholders, if required
by the title insurance company."  Emphasis added.  There is no evidence of such a
request by the title company.

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 10

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  enforceable contractual duties, that borrowers are neither parties nor third-party

2  beneficiaries entitled to enforce the servicing guidelines." *McKenzie v. Wells Fargo Bank,*

3  *N.A.*, 931 F. Supp. 2d 1028, 1044 (N.D. Cal. 2013) (citing cases); accord *Coulibaly v. J.P.*

4  *Morgan Chase Bank, N.A.*, No. 10-3517, 2011 U.S. Dist. LEXIS 87495, 2011 WL 3476994

5  at *15 (D. Md. Aug. 8, 2011) (finding Plaintiffs' discussion of the FNMA Servicing Guide

6  "superfluous" and "triply deficient," as the Guide does not impose contractual duties

7  between Chase and Plaintiffs, does not it confer third-party beneficiary status on Plaintiffs,

8  and provides the loan servicers with discretion), aff'd 526 Fed. App'x 255 (4th Cir. 2013);

9  *Hinton v. Fed. Nat'l Mortgage Ass'n*, 945 F. Supp. 1052, 1057 (S.D. Tex. 1996) ("FNMA

10  is the only one that can question [the loan servicer's] lack of adherence to the guide.");

11  *Pennell v. Wells Fargo Bank, N.A.*, Case No. 1:10-cv-00582, 2012 U.S. Dist. LEXIS

12  96426, 2012 WL 2873882 at *7-8 (S.D. Miss. July 12, 2012) (collecting and discussing

13  cases); *Wade v. Chase Bank USA, N.A.*, No. 2:12-cv-3565-RMG, 2014 U.S. Dist. LEXIS

14  192322, at *12-13 (D.S.C. Mar. 21, 2014); *Vega v. Ocwen Fin. Corp.*, No. 2:14-cv-04408-

15  ODW(PLAx), 2015 U.S. Dist. LEXIS 69212, at *12 (C.D. Cal. May 28, 2015)(Plaintiffs'

16  reliance on the Fannie Mae Servicing Guide is simply untenable).

17  Here, Plaintiff, the borrower, has no claim or cause of action against Green Tree,

18  the servicer, based on Green Tree's alleged failure to comply with Freddie Mac's servicing

19  guidelines.

20          d.      <u>Emotional Distress Damages Not Recoverable.</u>

21  Paragraph 22 of Plaintiff's Complaint seeks "emotional damages" under the breach

22  of contract claim.  Absent willful and wanton conduct, emotional distress damages are not

23  recoverable under a breach of contract claim.  *Hendrickson v. Tender Care Animal Hosp.*

24  *Corp.*, 176 Wash.App. 757, 762-767 (2013).  Indeed, recovery for emotional distress

25  damages is not allowed "* * * unless the breach also caused bodily harm or the contract

26

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 11

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   or the breach is of such a kind that serious emotional disturbance was a particularly likely

2   result." *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash.2d 426, 443 (1991).  It is not

3   enough that the breach of a contract causes emotional distress.  Emotional distress

4   damages are only available in regard to certain types of contracts, *i.e.* where the type or

5   character of the contract renders emotional suffering for reasons other than pecuniary

6   loss foreseeable.  *Hendrickson*, 176 Wash.App. 764-765.

7         Plaintiff's Complaint does not allege willful or wanton conduct.  Nor is an alleged

8   loan modification agreement the type of contract that, under *Gaglidari*, would support a

9   claim for emotional distress damages.  Plaintiff's claim for emotional distress breach of

10   contract damages should be dismissed.

11             e.     Cost of Suit are not Compensatory Damages.

12         Plaintiff claims as damages for breach of contract, "monetary damages in terms of

13   the costs to file this lawsuit."  Complaint, ¶ 22.  Plaintiff's allegation is for costs, which are

14   determined pursuant to RCW 4.84.010, *et seq.*, and CR 54(d), not as an element of

15   damages in the underlying cause of action.

16        **3.**    **Plaintiff's CPA Claim Does Not Meet the Elements of the *Hangman***
17              ***Ridge* Test.**

18            a.  Applicable Law.

19         To sustain a CPA claim, Plaintiff must prove the following five elements: 1) an

20   unfair or deceptive act or practice, 2) occurring in trade or commerce, 3) that impacts the

21   public interest, 4) causes injury to the plaintiff's business or property, and 5) that injury is

22   causally linked to the unfair or deceptive act.  *Hangman Ridge Training Stables, Inc. v.*

23   *Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).  Moreover, Plaintiff must prove that *but*

24   *for* Green Tree's allegedly unfair or deceptive practice, he would not have suffered his

25

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    alleged harm.  *Indoor Billboard v. Integra Telecom*, 162 Wn.2d 59, 81-82 (2007) (test set

2    forth in Standard Jury Instruction 15.01).

3               b.    Plaintiff's CPA Claim Fails the *Hangman Ridge* Test.

4          Plaintiff cannot prove an unfair or deceptive act by Green Tree.  Plaintiff's alleged

5    harm is that he paid fees related to his loan being in default, as opposed to a permanent

6    modification status.  That is, Plaintiff's alleged violation of the Washington CPA flows from

7    his argument that Green Tree breached its alleged promise in the August 6, 2014 letter

8    to permanently modify the Loan based solely on Plaintiff making the trial period plan

9    payments.  As set forth in § II.B.2 above, this argument is simply without merit.  Because

10   Green Tree properly declined to offer Plaintiff a permanent loan modification, summary

11   judgment in Green Tree's favor is appropriate on Plaintiff's CPA claims.

12         Plaintiff cannot put forth admissible evidence to satisfy the public interest impact

13   element of the *Hangman Ridge* test.  There is no evidence that this was anything more

14   than a one-time occurrence involving Plaintiff's somewhat unique circumstances.

15   Moreover, Plaintiff also cannot put forth admissible evidence proving that Green Tree was

16   the *but for* cause of his alleged harm.  Green Tree did not cause Plaintiff to default on the

17   Loan; Plaintiff admits he was delinquent in his payments.  Thomas Depo., 72:1-3.  Green

18   Tree did not cause the various liens to be recorded against the Property, which clouded

19   title to the Property.  Plaintiff initially denied the liens were his and never took any action

20   to address them.  Plaintiff, not Green Tree, was the *but for* cause of his alleged damages.

21   To the extent Plaintiff seeks emotional distress damages under his CPA claim, such

22   damages are not recoverable.  *Demopolis v. Galvin*, 57 Wn. App. 47, 55 (1990); *Panag*

23   *v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57-60 (2009)

24         Summary judgment should be granted in Green Tree's favor on Plaintiff's Second

25   Claim for Relief.

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    **4.    Plaintiff's Negligent Misrepresentation Claim Fails.**

2         a.    <u>Plaintiff Cannot Meet his Burden of Proof.</u>

3         In order to prevail on his claim for negligent misrepresentation, Plaintiff must prove

4    by "clear, cogent, and convincing evidence" that (1) Green Tree supplied information for

5    the guidance of Plaintiff in his business transactions that was false; (2) Green Tree knew

6    or should have known that the information was supplied to guide Plaintiff in business

7    transactions; (3) Green Tree was negligent in obtaining or communicating false

8    information; (4) Plaintiff relied on the false information supplied by Green Tree; (5)

9    Plaintiff's reliance on the false information was reasonable under the circumstances; and

10   (6) the false information was the proximate cause of damages to the Plaintiff. *Ross v.*

11   *Kirner*, 162 Wn.2d 493, 499 (2007). Plaintiff must show from evidence in the record that

12   the facts at issue supporting the negligent misrepresentation claim are "highly probable."

13   *Tiger Oil Corp. v. Yakima Cnty.*, 158 Wn. App. 553, 562 (2010).

14        Plaintiff's negligent misrepresentation claim against Green Tree is based on the

15   August 6, 2014 letter. Complaint, ¶¶ 30-33. The plain language of the letter states the

16   trial payment period is the "first step" to qualifying for a permanent modification of the

17   Loan. Christensen Decl., ¶ 11, Ex. 2, p. 1. The other steps necessary to obtain a

18   permanent modification of the Loan is set forth under the heading "Next Steps" on page 2

19   of the letter. *Id.* at p. 2. This included meeting "any other qualification requirements ***."

20   *Id.* If any requirements were not met, the Loan would not be modified. *Id.* Green Tree

21   did <u>not</u> make the representation that, if the three trial period payments were made, the

22   Loan would be permanently modified. Complaint ¶ 17.

23        Plaintiff cannot set forth "clear, cogent, and convincing evidence" to sustain a

24   negligent misrepresentation claim against Green Tree. *Ross, supra*. Therefore, Plaintiff's

25   negligent misrepresentation claim fails as a matter of law.

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1             b.      <u>Green Tree did not Owe Plaintiff any "Duty" Under Tort Law.</u>

2             An injury is remediable in tort <u>only</u> if the breach of a tort duty arises independent

3 of the terms of the contract. *Eastwood v. Horse Harbor Found, Inc.*, 170 Wn.2d 380, 389

4 (2010).  When no independent tort duty exists, tort does not provide a remedy. *Id.*  The

5 court determines whether there is an independent tort duty of care, and "'[t]he existence

6 of a duty is a question of law and depends on mixed considerations of logic, common

7 sense, justice, policy, and precedent.'" *Id.*  A lender/servicer's duty to a borrower, if any,

8 is based in contract and, therefore, no negligence claim exists against the lender/servicer.

9 *Brown v. Countrywide Home Loans*, 2016 U.S. Dist. LEXIS 56200 (E.D. WA Apr. 27,

10 2016) (negligence claim against Bank of America barred).

11             Here, Plaintiff's tort claim for negligent misrepresentation is barred because any

12 relationship Plaintiff may have had with Green Tree is based in contract, *i.e.* the

13 promissory note, the deed of trust, and/or, as Plaintiff alleges, the August 6, 2014 letter.

14 *See* Complaint, ¶¶ 17-22.  Thus, any "duty" Green Tree may arguably owe Plaintiff arises

15 from these agreements.  Green Tree does not owe Plaintiff any independent tort duty,

16 and Green Tree's motion to dismiss the negligent misrepresentation claim against it

17 should be granted.

18             Also, Plaintiff claims as damages for negligent misrepresentation, "monetary

19 damages connected with filing this lawsuit."  Complaint, ¶ 33.  Plaintiff's allegation is for

20 costs, which are determined pursuant to RCW 4.84.010, *et seq.*, and CR 54(d), not as an

21 element of damages in the underlying cause of action.

22 / / /

23 / / /

24 / / /

25 / / /

26

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 15

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

**CONCLUSION**

2    Based on the foregoing, Defendant Green Tree respectfully requests that each one

3  of Plaintiff's claims against Green Tree be dismissed, with prejudice.  Further, if Plaintiff's

4  breach of contract claim is not dismissed, his claims for emotional distress damages and

5  costs of suit damages (which are alleged solely under the breach of contract claim) should

6  not be allowed.

7    Dated:  May 12, 2017.

8                   SUSSMAN SHANK LLP

9

10                  By */s/ William G. Fig*
                    William G. Fig, WSBA 33943
11                  wfig@sussmanshank.com
                    Attorneys for Green Tree Servicing LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

## CERTIFICATE OF SERVICE

THE UNDERSIGNED certifies:

1.      My name is Karen D. Muir. I am a citizen of Washington County, state of Oregon, over the age of eighteen (18) years and not a party to this action.

2.      On May 12, 2017, I caused to be delivered **electronically, via the court's ecf system**, a copy of: **GREEN TREE SERVICING LLC'S MOTIONS FOR SUMMARY JUDGMENT**, to the interested parties of record, addressed as follows:

Christina Latta Henry        chenry@HDM-legal.com, hdmecf@gmail.com, mainline@hdm-legal.com

Jacob Daniel DeGraaff        mainline@hdm-legal.com, hdmecf@gmail.com

I SWEAR UNDER PENALTY OF PERJURY that the foregoing is true and correct to the best of my knowledge, information, and belief.

                                        _/s/ Karen D. Muir_____
                                        Karen D. Muir, Legal Assistant

**\*22428-086\MOTION FOR SUMMARY JUDGMENT (02346410);3**

GREEN TREE SERVICING LLC'S MOTIONS FOR
SUMMARY JUDGMENT - Page 17

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130