Christina L Henry, WSBA# 31273
chenry@hdm-legal.com
Henry, DeGraaff & McCormick, PS
1833 N 105th St, Ste 203
Seattle, WA 98133
Tel# 206-330-0595
Fax: +1-206-400-7609

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

MICHAEL THOMAS,

                  Plaintiff,

     v.

FLAGSTAR BANK, NA and GREEN
TREE SERVICING LLC,

                Defendants.

PLAINTIFF'S RESPONSE TO GREEN
TREE SERVICING LLC'S MOTION FOR
SUMMARY JUDGMENTAND
REQUEST TO STRIKE

NOTE ON MOTION CALENDAR

June 9, 2017

## I.    **INTRODUCTION**

      Plaintiff Michael Thomas is the owner of a residence located at 27546 254th Way SE,

Maple Valley, WA 98038 ("Residence"). Plaintiff sued his mortgage loan servicer, defendant

Green Tree Servicing, LLC ("Green Tree"),[1] for refusing to approve a loan modification after the

defendant had misled him into believing that an approval was imminent. Plaintiff's lawsuit

---

[1] Green Tree Servicing was rebranded as "Ditech Financial LLC" by its corporate parent in 2015, after Plaintiff
filed his complaint. For clarity and to maintain compatibility with the caption, this brief refers to the rebranded
corporate entity as "Green Tree" throughout.

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION
FOR SUMMARY JUDGMENT AND REQUEST TO
STRIKE- 1

HENRY, DeGraaff & McCormick, P.S.
1833 N 105th St. Ste 203
Seattle, Washington  98133
telephone (206) 330-0595
fax (206) 400-7609

alleges breach of contract, violations of the Washington Consumer Protection Act (CPA) and negligent misrepresentation.

- Green Tree offered a trial period plan ("TPP") to modify Plaintiff's loan. After Plaintiff successfully completed the plan as agreed upon, however, Green Tree reneged on the agreement by failing to convert the trial plan to a permanent loan modification. Dkt. 39, Declaration of Christy Christensen ("Christensen Decl."), ¶ 14, Ex.5.

- Without just cause or any plausible explanation, Green Tree retained Plaintiff's TPP plan payments and compelled Plaintiff to incur substantial time, effort and attorney's fees in pursuit of a loan modification through Washington's Foreclosure Fairness Act (FFA) mediation program, RCW 61.24.163; the defendant never had any intention of offering Plaintiff a loan modification.

- Following Plaintiff's filing of the instant complaint, Green Tree initiated a non-judicial foreclosure action against Plaintiff relying on a Notice of Default issued in March 2013. This caused Plaintiff to enter into a stipulation to suspend the foreclosure sale. In exchange, Plaintiff has been making monthly payments in to the court registry. Dkt# 18.

## II.   STATEMENT OF FACTS

A. CASE BACKGROUND AND HISTORY

### 1.   Flagstar Bank

Michael Thomas entered into a Note and Deed of Trust with Flagstar Bank in the amount of $398,000 on June 11, 2008. After making payments for several years, Mr. Thomas fell behind on the mortgage and sought a loan modification from Flagstar. In September 2012, Flagstar

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 2

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

offered Thomas a trial period plan (TPP) under the federal Home Affordable Modification Program (HAMP). The TPP specified that Mr. Thomas would be offered a permanent loan modification if he complied fully with the terms of the agreement, including making three monthly mortgage payments at a reduced rate. See *Declaration of Jacob DeGraaff in Support of Plaintiff's Response to Green Tree's Motion for Summary Judgment* ("DeGraaff Decl."), ¶ 8, Ex. 6.  Although Mr. Thomas made all three trial payments on time as agreed, DeGraaff Declaration, ¶ 7, Ex. 5, Flagstar claimed Mr. Thomas had not made additional payments required to finalize the modification, and Flagstar revoked its permanent modification offer in February 2013. *Id.* at ¶ 7, Ex. 7.

In preparation for foreclosure proceedings, the trustee ordered a title report  over the property in March 2013.  *Id.* at ¶ 3-4, Ex. 1 and 2. This report included details about three payroll tax liens that had been recorded against the property on behalf of the federal government in connection with a painting business that Mr. Thomas owned and operated until 2010. Because of the nature of liens being tied to his business rather than his home, Plaintiff was unaware of the existence of these liens, and would not learn about them for three more years. Dkt. 40, Decalration of William G. Fig ("Fig Decl."), ¶ 3, Ex. 1, Deposiiton Transcript of Michael Thomas ("Thomas Depo."), 41:21-42:5.

In April 2013, Flagstar initiated foreclosure against Plaintiff's property. DeGraaff Decl., ¶ 6, Ex. 4. (GT-00015).  Mr. Thomas hired an attorney and continued to seek a loan modification through FFA mediation. This process began in December 2013, and lasted through January 2015.

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 3

HENRY, DEGRAAFF & MCCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

1

2

Dkt. 40, Fig. Decl, ¶ 4, Ex. 2 (Deposition transcript for Clay Hamilton ("Hamilton Depo"), 26:6-23, Ex. 42 at p. 1 (GT 05446).

3

4

### 2.    Green Tree Servicing

In the midst of the FFA Mediation process, on January 16, 2014, Flagstar transferred Mr. Thomas's loan to Green Tree Servicing, LLC. Dkt. 39, Christensen Decl, ¶ 10, Ex. 1. As part of the FFA mediation process, Green Tree offered Mr. Thomas a new TPP, which also required him to make three monthly payments at a designated rate starting in September 2014. *Id.*, ¶ 11, Ex. 2. Mr. Thomas timely made all three of the monthly payments as agreed and attended the final FFA mediation session on January 21, 2015. At that session, for the first time, representatives of Green Tree informed him that a title report the bank had requested only five days earlier on January 16, 2015 had revealed the existence of federal liens on the property (the same liens that had been reported on Flagstar's March 2013 and October 2014 title report, about which Mr. Thomas was still unaware) and that Green Tree would therefore be unable to offer him a permanent loan modification. Dkt. 39, Christensen Decl, ¶ 10, Ex. 1; Dkt. 40, Fig. Decl, ¶ 4, Ex. 2, Hamilton Depo, 17:25-18:8, Ex. 41 at GT 05530-05531.

Green Tree acknowledges that it received the March 2013 title report commissioned by the foreclosure trustee at the time that it took over the loan from Flagstar. DeGraaff Decl. ¶ 3, Ex 1. When acquiring a loan, Green Tree performs extensive due diligence procedures, customized for each transaction, that include verifying the loan data and records that have been sent by the prior loan servicer. *Id.* The liens that led to the denial of Mr. Thomas's permanent loan modification existed and were known to Green Tree before it offered Mr. Thomas a TPP in 2014.

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 4

DeGraaff Decl. ¶ 4, Ex 2. Importantly, although Green Tree disputes their compensability, it has *not* disputed the fact that Michael Thomas suffered substantial emotional harm as a result of their conduct.

B. MATERIAL FACTS IN DISPUTE

Plaintiff disputes a number of factual assertions Green Tree has made in its motion, as follows:

**1.** Number and Dates of Title Reports Obtained by Green Tree

In its motion, Green Tree states:

> With Freddie Mac loans, Green Tree's usual practice is to pull a title report during the beginning of the TPP period, and after the TPP payments, but before a final modification offer was made. On January 16, 2015, Green Tree obtained a title report regarding the Property. The title report showed several federal tax liens recorded against the Property.

Green Tree's Motion for Summary Judgment ("Motion"), at 4 (internal citations omitted). Plaintiff strongly disputes this claim. Green Tree did, in fact, obtain two title reports on Plaintiff's property, consistent with its characterization of its usual practices, but only explicitly mentions one of them. The January 16, 2015 title report was actually the *second* report ordered by Green Tree, the first having been ordered and received in October 2014, after Plaintiff had made two of his three scheduled TPP payments but before the third. DeGraaff Decl. ¶ 5, Ex 3. Green Tree subsequently accepted Plaintiff's final payment with knowledge of the payroll tax

HENRY, DEGRAAFF & MCCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

liens that appeared on the October 2014 report (as well as on the March 2013 report that Green Tree had received and reviewed earlier in 2014).[2]

**2.**   Testimony Regarding Title Insurance

Green Tree claims that "[t]he title company required the removal of the tax lien encumbrances before it would issue title insurance," (Motion, at 4), relying on the declaration of Christy Christensen, corporate litigation representative for Ditech Financial LLC, and the January 2015 title report itself. Dkt. 39, Christensen Decl, ¶ 13, Ex. 3. Yet, Ms. Christensen cannot testify to the policies and practices of an unidentified title insurance company, or any requirement the company may have in issuing title insurance. The title report makes no mention of any such policies and procedures, and further states that the liens as reported are preliminary and further information is required to finalize the report. *Id.,* ¶ 13, Ex. 3, p. 5. Neither Ms. Christensen's Declaration nor the title report constitutes a "fact" let alone a determining fact of Green Tree's refusal to finalize the loan modification.

**3.**   Statement Regarding Freddie Mac's Guidelines

Green Tree also claims that "[b]ecause of Freddie Mac's guidelines, Green Tree could not offer a final modification to Plaintiff with the tax liens against the Property." Motion at 4. The assumption that Freddie Mac could not accept such a modification appears to involve the presumed unavailability of title insurance, which is not in evidence as stated previously. Dkt. 40, Fig. Decl, ¶ 4, Ex. 2, Hamilton Depo, 26:6-23, Ex. 42 at p. 1 (GT 05446).

---

[2] Green Tree subsequently accepted two more timely payments from Mr. Thomas prior to the January 2015 mediation session at which it denied his request for a permanent loan modification. DeGraaff Decl., ¶ 11, Ex 9.

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 6

HENRY, DEGRAAFF & MCCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

### 4.   Relevance of Plaintiff's Initial Denial of Liens

Green Tree presents as material and relevant the fact that Mr. Thomas initially denied that the tax liens against his property were his, then later admitted that they were. Motion, at 4-5. Plaintiff does not now deny that the liens are his, but does dispute the relevance of his earlier disavowal. He had no idea the loans existed until being informed of their existence in 2015, and had quite recently been asked by Green Tree to provide additional information verifying his identity due to "Michael Thomas" being a very common name. Dkt. 39, Christensen Decl, ¶ 12. Because Plaintiff genuinely needed the loan modification and expended tremendous time and resources to obtain it, he would have worked diligently to resolve the liens, had he been told by Green Tree about their existence. Plaintiff does not now deny that the liens are his, but does dispute the relevance of his earlier disavowal. Dkt. 40, Fig Decl ¶3, Ex. 1, Thomas Depo, 42:6-46:23 and 44:13-46:23. Ex. 6. Green Tree presents no evidence that Mr. Thomas's initial skepticism about the liens was not genuine, although it is perfectly happy to use it to insinuate dishonesty.

### 5.   Relevance of Number of Claims

Green 'Tree makes a point of stating that "Plaintiff alleges **only three claims** against Green Tree." Motion, at p. 5. (emphasis in original). A complaint requires a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp.Twombly*, 127 S. Ct. 1955, 550 U.S. 544, 167 L. Ed. 2d 929 (2007). A plaintiff's allegations need "only enough facts to state a claim for relief that is plausible on its

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 7

HENRY, DEGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

face." *Twombly*, 550 U.S. at 570. "[W]e do not require heightened fact pleading of specifics. . ." *Id*.

The question, thus, is whether Green Tree has been given fair notice of Plaintiff's claims and the grounds upon which it rests. Here, Plaintiff meets and exceeds the applicable pleading standard and attempts to limit the case based on the complaint should be ignored by this court.

### III.   STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. A fact is material if it might affect the outcome of the proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed 2d 202 (1986). In determining whether the movant has met its burden, the Court should consider all reasonable inferences in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986).

Once the initial burden is met, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Liberty Lobby*, 477 U.S. at 250. Facts must be viewed in the light most favorable to the non-moving party where there is a genuine dispute to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The evidence

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 8

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

presented must be "specific, detailed, and disputed facts; speculation, argumentative assertions, opinions, and conclusory statements will not suffice." *Sanders v. Woods*, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

As a preliminary matter, the evidence relied upon by Michael Thomas in this summary judgment response includes corporate documents produced by Green Tree in discovery. Therefore, they are admissible on a motion for summary judgment; "they are self-authenticating and constitute the admissions of a party opponent." *Anand v. BP W. Coast Products LLC*, 484 F.Supp.2d 1086, 1092 (C.D.Cal.2007).

## IV.   LEGAL ANALYSIS

### A.  BREACH OF CONTRACT CLAIM

It is undisputed that Michael Thomas was offered a TPP to modify his home mortgage loan through the HAMP program, that he paid all the TPP payments, that he clarified all the requirements for a home loan modification and was only denied because he failed to clear tax liens of which he had no prior knowledge (and about which Green Tree and prior servicers knew since March 2013). For Green Tree to assert that there is no genuine issue of material fact as to whether a contract existed is inaccurate. There is a clear issue of fact here as to whether a binding and enforceable loan modification was made between the parties.

#### 1.   Subordination of Federal Tax Liens is Not Necessary

Loan modifications offered through the HAMP program are largely standardized, and offer a clear set of guidelines for servicers to follow.

> The servicers are to conduct an initial evaluation of a particular
> homeowner's eligibility for a loan modification using a set of
> guidelines promulgated by the Treasury Department. If the

borrower meets those criteria, the guidelines direct the servicer to offer that individual a Trial Period Plan ("TPP") as a precursor to obtaining a permanent modification. If the borrower complies with the TPP's terms, including making required monthly payments, providing the necessary supporting documentation, and maintaining eligibility, the guidelines state that the servicer should offer the borrower a permanent loan modification.

*Young v. Wells Fargo Bank, NA,* 717 F.3d 224, 229 (1st Cir. 2013) (internal citations and punctuation omitted). In fact, Green Tree specifically informed Plaintiff that "your mortgage *will* be permanently modified" provided that he made payments timely and met other obligations. Dkt. 39, Christensen Decl, ¶ 11, Ex. 2. (emphasis added). Michael Thomas accepted this offer. He complied with all the terms of the Modification that he was aware of within the time specified. *See Corvello v. Wells Fargo Bank, NA,* 728 F.3d 878 (9th Cir. 2013) (a HAMP trial plan can be an enforceable contract); *Jones v. Best*, 134 Wn.2d 232, 499, 950 P.2d 1, 5 (1988) ("Mutual modification of a contract by subsequent agreement arises out of the intentions of the parties and requires a meeting of the minds."); *Keystone Land & Dev.Co. v. Xerox Corp.*, 152 Wn.2d 171 171, 94 P.3d 945, 949 (2004) (Mutual assent will be expressed as an offer and acceptance).

Green Tree's denial of Plaintiff's loan modification hinges on its contention that Freddie Mac's guidelines require Plaintiff to "clear title" before a modification can be offered. Freddie Mac has no such policy. Instead, it merely requires that "the mortgage must be a conventional first lien mortgage currently owned in whole or part by Freddie Mac." DeGraaff Decl, ¶ 4, Ex. 2, Hamilton Depo, 26:6-23, Ex. 42 at p. 1 (GT 05446).  "Clearing title" is not necessary because *the payroll tax liens are already subordinate to the first mortgage, and will remain so after any loan modification*. The Internal Revenue Code clearly states that federal tax liens such as the ones at

Henry, DeGraaff & McCormick, P.S.
1833 N 105ᵗʰ St. Ste 203
Seattle, Washington  98133
telephone (206) 330-0595
fax (206) 400-7609

1   issue here do not have priority over a preexisting mortgage lien in first position. 26 U.S.C.

2   § 6323(b)(1)(B). As additional support for how to interpret the priority position of loan

3   modifications, the Restatement (Third) of Property says:

4           "(c) if the mortgagor and mortgagee reserve the right in a mortgage
            to modify the mortgage or the obligation it secures, the mortgage
5           as modified retains priority even if the modification is materially
            prejudicial to the holders of junior interests in real estate, except as
6           provided in Subjection (d)."

7   Restatement (Third) of Prop.: Mortgages, § 7.3 (1997). As Plaintiff's deed of trust does in fact

8   say that "[t]his Security Instrument secures to Lender: (i) the repayment of the

9   Loan, and all renewals, extensions and modifications of the Note," the doctrine from the

10  Restatement clearly applies in this matter. DeGraaff Decl. ¶ 7, Ex 5.

11

12          This rather elementary fact sheds some light on Green Tree's otherwise somewhat

13  perplexing insistence that it had no obligation to obtain a subordination agreement from the

14  federal government because, Green Tree says, "There is no evidence of . . . a request [for such an

15  agreement] from the title company." *There is no such request because a subordination*

16  *agreement is not necessary*. Even were this not the case, the Freddie Mac guidelines make it

17  clear that obtaining any necessary subordination agreements is an obligation of the servicer:

18          1. . . . [T]o ensure the First Lien position the Servicer must: . . . (c)
19          Obtain subordination agreements from any junior lienholders, if
            required by the title insurance company. . . .
20
21  Dkt. 40, Fig. Decl, ¶ 4, Ex. 2, Hamilton Depo, 26:6-23, Ex. 42 at p. 1 (GT 05446). Green Tree

22  gives no indication that it felt any obligation to inquire as to *why* the title company made no such

23  request. Regardless of Green Tree's lack of initiative, the only way to read guideline B65.20 1(c)

24  is that if the title insurance company does not require any subordination agreements, no

25

26  PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION          **HENRY, DEGRAAFF & MCCORMICK, P.S.**
    FOR SUMMARY JUDGMENT AND REQUEST TO              1833 N 105TH ST. STE 203
    STRIKE- 11                                        SEATTLE, WASHINGTON 98133
                                                      telephone (206) 330-0595
                                                      fax (206) 400-7609

subordination agreements are necessary for the modification to take place. Instead, Green Tree argues exactly the opposite: no subordination agreement, no modification. This is not only untrue, it's the direct opposite of the truth.

Not only did Green Tree wrongly deny  Plaintiff a loan modification based on its mistaken belief that the mortgage was subordinate to the tax liens, it now supports that action by appealing to the absence of any subordination agreements—agreements which were never necessary, were never asked for, and the absence of which are explicitly not a basis for denial. This reasoning crosses the line from audacity to outright chutzpah.

**2.**   <u>Green Tree Knew About the Liens and Did Nothing</u>

Green Tree rejects any comparison to *Corvello* because, it says, the servicer in that case offered no explanation for its failure to offer the borrower a loan modification. Motion, at 9. Green Tree's sin is arguably worse than the servicer's in *Corvello*, in that Green Tree knew of its putative (and incorrect) reasons for denying the modification several months before even offering the modification, but did not inform Plaintiff until he had completed his obligations. Regardless, the Ninth Circuit in *Corvello* treats the servicer's lack of an explanation as little more than a side issue. Instead, the salient issue in that case was the servicer's obligation to determine, in a timely fashion, whether the borrower qualified for a modification, and to timely inform the borrower if not, as opposed to simply keeping the trial payments without fulfilling its own obligations in turn. *Corvello*, 728 F.3d at 883-84. Green Tree knew of the liens on Plaintiff's property after receiving the March 2013 title report, but offered Plaintiff a TPP anyway. Even if the 2013 report had never existed, Green Tree certainly knew about the liens

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

after receiving the October 2014 title report, but allowed Plaintiff to make one more payment

before finally—three months later, and after Plaintiff had made two *additional* timely payments

above and beyond the terms of the agreement—informing him that he would be receiving no

modification due to information Green Tree had possessed for months, but about which Plaintiff

knew nothing at all.

### 3. Green Tree Violated Good Faith and Fair Dealing

Green Tree also breached the implied duty of good faith and fair dealing that exists "in

relation to performance of a specific contract term." *Keystone*, 94 P.3d at 949 (citing *Badgett v.*

*Security State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356 (1991). It is undisputed that the terms of

the HAMP modification was based on Green Tree's consideration of Michael Thomas' financial

and personal information in accord with specific formulas. Here, Michael Thomas' payment of

the three trial period payments and cooperation with Green Tree in verifying his name and

identification were the only obligations he was required to comply with to obtain the

modification. However, Green Tree's act of withholding the title reports from March 2013,

October 2014 and January 2015 until the final FFA mediation in January 2015 that informed him

he failed and was denied a loan modification violated the duty of good faith and fair dealing.

[3]*Rekhter v. Dept. of Soc. & Health Servs.*, 180 Wn.2d 102, 323 1036 (2014) (The duty arises

when one party has discretion to select the formula or method being used to derive at a particular

in the contract)*; see also, Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991);

---

[3] "Absent those limited cases where a breach of a consensual contract term is not claimed or alleged, the only justification for asserting a separate cause of action for breach of the implied covenant is to obtain a tort recovery." Careau& Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal.App. 3d 1371, 1395 (1990). Plaintiffs do not seek a tort recovery.

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

*Aventa Learning, Inc. v. K12, Inc.,* 830 F. Supp. 2d 1083 (W.D. Wash. 2011). "There is no one-size-fits-all definition of good faith and fair dealing. Rather, the duty varies somewhat with the context in which it arises. One may violate the duty of good faith and fair dealing by, for example, (1) evading the spirit of a bargain; (2) willfully rendering imperfect performance; (3) interfering with or failing to cooperate in the other party's performance; (4) abusing discretion granted under the contract; or (5) performing the contract without diligence." *Microsoft Corp. v. Motorola, Inc.,* 963 F.Supp.2d 1176 (W.D.Wash. 2013). Green Tree's conduct toward Michael Thomas meets all of these factors.

The power disparity here allowed Green Tree to hold information about the necessary guidelines Michael Thomas was supposed to meet and keep it secret and inaccessible until such time as he was given no opportunity to address them. Green Tree was obliged to determine whether Michael Thomas qualified for a loan modification at the moment that he accepted its offer of a TPP, and if he did not, to deny the modification on that basis. *Corvello*, 728 F.3d at 884 (citing *Wigod v. Wells Fargo Bank, NA*, 673 F.3d 547 (7th Cir. 2012)). Instead, it simply cashed his checks.

**4.**     Costs from Breach of Contract

The Plaintiff concedes that costs of litigation are not recoverable as a separate category of damages for breach of contract, but nonetheless should still be recoverable to Mr. Thomas if the Plaintiff prevails at trial, per CR 54(d) and RCW 4.84.010. Such costs include but are not limited to the costs of depositions and the cost of service of process to enjoin the foreclosure of the Plaintiff's home.

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION
FOR SUMMARY JUDGMENT AND REQUEST TO
STRIKE- 14

Henry, DeGraaff & McCormick, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

**5.** Emotional Distress

While generally true that parties cannot recover emotional distress damages for breach of contract, there are exceptions. In *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 440-48, 815 P.2d 1362 (1991), Ronda Gaglidari sued Denny's for violating the terms of her employment contract by summarily terminating her employment for being involved in a bar altercation while off duty, rather than following the prescribed disciplinary procedures in the employee handbook. Although the jury awarded $75,000 in noneconomic damages, the Washington Supreme Court held that emotional distress damages could not be awarded in the context of her case, but stated that an exception to that rule exists when "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." *Id*. at 443 citing RESTATEMENT (SECOND) OF CONTRACTS § 353. The comments to the restatement further elaborate:

> Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.

RESTATEMENT (SECOND) OF CONTRACTS § 353 cmt. a.

In the present situation, the denial of a permanent loan modification to Michael Thomas is the type of contract breach that could cause him to lose his home, certainly analogous to a breach that could cause sudden improverishment or bankruptcy. RESTATEMENT (SECOND)

HENRY, DEGRAAFF & MCCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

OF CONTRACTS § 353 cmt. a. In a situation such as this, where Green Tree was intimately familiar with Michael Thomas' finances, and they solely contained the information needed to meet the "applicable qualification requirements" for his loan modifciation, withholding information that those requirements included the elimination of subordinate tax liens until January 2015, after Green Tree had cashed five payments and giving Mr. Thomas only a few days to "clear title," would no doubt raise the possibility of another foreclosure and not surprisingly, cause severe emotional distress. Green Tree made their intentions clear, clear the title yourself in three days or risk losing your house to foreclosure. The fear of wrongly losing one's home could and in this case did cause serious emotional distress.

B. <u>NEGLIGENT MISREPRESENTATION</u>

Plaintiff believes he has more than adequately demonstrated that Green Tree acted incorrectly and contrary to both federal law and Freddie Mac's loan modification guidelines by denying him a modification based on the existence of already-subordinate liens. In the alternative, however, a legally and procedurally justified denial would nevertheless be subject to an actionable negligent misrepresentation claim.

Under Washington law, a defendant is liable for negligent misrepresentation when it 1) makes an affirmative misrepresentation or 2) negligently fails to disclose information when it has a duty to do so. *Van Dinter v. Orr,* 157 Wn.2d 329, 333, 138 P.3d 608 (2006). Green Tree cites *Ross v. Kirner*, 162 Wn.2d 493, 499 (2007) for the first version of the tort that requires Green Tree to make an affirmative actual misrepresentation. However, another version of the tort exists when a defendant fails to disclose material information. *Van Dinter,* 157 Wn 2d at 333. The

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 16

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

failure to disclose establishes negligent misrepresentation when the party owes a duty to disclose. *Id.*

**1.**   Green Tree owed Michael Thomas a Duty of Reasonable Care

Green Tree argues that a lender/servicer has no independent tort duty apart from the terms of the contract in this case. (Mot. at 15.) However, Plaintiff's negligent misrepresentation claim is not based on servicing related to Michael Thomas' existing mortgage. Rather, the issues in this case concern the actions and statements of Green Tree in relation to Mr. Thomas's efforts to obtain a loan modification, not from any contractual obligation Green Tree owed him as a loan servicer.

As opposed to the ordinary duty of care lenders and borrowers have when they operate at arm's length in banking or lending relationships, Green Tree actively engaged with Michael Thomas in the modification context. *Ansanelli v. JP Morgan Chase Bank, NA.,* 2011 WL 1134451, at *7 (N.D. Cal. 2011) (offering a loan modification and engaging on the TPP creates a duty of care). Once a loan servicer accepts an application for a loan modification, it is subject to a standard of reasonable care in handling the application. *Martinez v. Flagstar Bank, FSB,* 2016 WL 3906810, at *7 (E.D. Cal. July 19, 2016). Moreover, since obtaining a loan modification in this case required facts that were within Green Tree's knowledge and "not easily ascertained by the [borrower]" without the reliance on "the superior specialized knowledge of [Green Tree]," and the fact that Green Tree had an "unfair advantage by remaining silent," there is a more than adequate showing that Green Tree owed a duty of reasonable care to Mr. Thomas. *Van Dinter,* 157 Wn.2d  at 334.

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

Green Tree incorrectly asserts that Plaintiff believes that "if the three trial period payments were made, the Loan would be permanently modified." Motion, at 14. Plaintiff has never claimed, and does not now believe, that his fulfillment of the three agreed-upon payments alone were sufficient to fulfill all the terms of the agreement. His initial Complaint merely noted, correctly, that he had "complied with all the terms of the trial period plans offered to him." Dkt 1, Complaint, ¶ 30. In fact, having lost a previous loan modification offer with the previous servicer, Michael Thomas was in a better position than just about anyone to understand that a TPP includes terms above and beyond simply making payments, for both the borrower and the servicer. Dkt. 40, Fig Decl ¶3, Ex. 1, Thomas Depo, 81:15-21. What Michael Thomas asserts is that Green Tree had a duty to investigate the history of the loan, to review his loan modification request in good faith, and to conform to the standards of conduct in the industry to protect him against further losses associated with the loan. *Jolley v. Chase Home Fin., LLC,* 213 Cal. App. 4th 872, 901 (2013) (there is no sweeping conclusion that a lender never owes a duty of care to a borrower). Where a TPP depends on "applicable qualification requirements" of which the borrower is not aware, a borrower justifiably relies on the statements of the loan servicer in the loan modification process to determine what those requirements might be. Here, Green Tree possessed superior knowledge about what the "applicable qualification requirements" as they understood them would be, and expressed to the borrower and his attorneys during the trial plan period that he needed to make timely plan payments and fill out the borrower identity application. There were no communications about any other "requirements" he had to meet. Green Tree participated in the loan modification process in a manner implying that a loan

modification was possible, when in reality it believed, based upon the existence of the liens, that the possibility of a loan modification did not exist. *Jolley*, 213 Cal.App. 4th at 892-893.

In *Jolley*, the California Court of Appeal found that "where there is a reasonable doubt as to whether a particular statement is an expression of opinion or the affirmation of a fact, the determination rests with the trier of the facts." *Id.* at p. 893. It is plausible that Green Tree acted unreasonably by failing to review Michael Thomas' request for a loan modification in good faith, having decided in advance it would not modify the loan because there was not "clear title." Dkt. 40, Fig. Decl, ¶ 4, Ex. 2, Hamilton Depo, 22:17-23:1-7; 29:5-21, Ex. 42 at p. 1 (GT 05446). The 2013 and 2014 title reports that, Green Tree believes, contained all the information it needed to know about whether or not they would give Michael Thomas a loan modification, were a part of his file, yet Green Tree negligently failed to communicate any of this to him.

## C. CONSUMER PROTECTION ACT CLAIM

To succeed on a claim under the Washington Consumer Protection Act (CPA), RCW 19.86, a plaintiff must establish (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that affects the public interest, (4) injury to the plaintiff's business or property, and (5) the injury was caused by the unfair deceptive act or practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531 (1986); *see* RCW 19.86.020.

There is no contractual or statutory authority for Green Tree to assert that it needs to clear title items of lower priority than the first mortgage lien in question, and its representation that it cannot obtain title insurance without "clearing title" is untrue and unfair, and therefore deceptive.

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION
FOR SUMMARY JUDGMENT AND REQUEST TO
STRIKE- 19

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

*Stephens v. Omni Ins. Co.*, 138 Wn.App. 151, 159 P.3d 10 (2007); *Panag v. Farmers Ins. Co. of WA*, 166 Wn.2d 27, 204 P.3d 885 (2009) (Collection agency's notices on behalf of insurers which created the impression that the stated amounts due were for debts owed and sent to collection even though all the insurers had were tort claims were unfair and deceptive); *Keyes v. Bollinger,* 31 Wn.App. 286, 640 P.2d 1077 (1982) (A contractor engages in an "unfair or deceptive" act by "estimating" or representing probable completion or repair dates to purchasers, with which "estimates" he is unable to substantially comply due to reasons which should be reasonably foreseeable in light of the contractor's knowledge and experience).

Michael Thomas does not need to prove either intent to deceive or actual deception on the part of Green Tree. *Testo v. Russ Dunmire Oldsmobile*, 16 Wn.App. 39, 50-51, 554 P.2d 349 (1976). Rather, the question is whether Green Tree's conduct has the capacity to deceive a substantial portion of the public. *Hangman Ridge,* 105 Wn.2d at 785-86. Green Tree claims that there is no public interest issue in play here, as this was simply "a one-time occurrence involving Plaintiff's somewhat unique circumstances." Motion, at 13. But Green Tree has asserted its belief that it cannot modify loans for properties with federal tax liens despite the fact that its mortgage was in a priority position over them, and has made it clear that it intends to continue acting on this belief. This claim and behavior have the capacity to deceive a substantial portion of the public based on Green Tree's business as a creditor/loan servicer, the volume of Green Tree's business, and the presumed level of susceptibility of the least sophisticated debtor. *Panag*, 205 P.3d at 895 (for purposes of a citizen suit under the CPA, in evaluating the tendency of

HENRY, DEGRAAFF & MCCORMICK, P.S.
1833 N 105ᵀᴴ ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

1  language to deceive, a court should consider the language as an unsophisticated reader would

2  read it).

3  ### V.   REQUEST TO STRIKE INADMISSIBLE STATEMENTS

4  It is well settled that only admissible evidence may be considered byt the trial court in

5  ruling on a motion for summary judgment. Fed.R.Civ.P. 56(e); *Beyene v. Coleman Sec. Services,*

6  *Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1998). In support of its motion, Green Tree submits improper

7  testimony through the Declaration of Christy Christenson concerning the interpretation of

8  document attached to her declaration abosut title insurance, when Ms. Christensen lacks

9  foundation to testify as such, as she has no personal knowledge of the proferred evidence as a

10 Corporate Litigation Representative for the Defendant.

11 In the summary judgment context, declarations must be made on personal knowledge, set

12 forth facts that would be admissible in evidence, and show the affiant is competent to testify to

13 the matters stated. Fed.R.Civ.P. 56(c)(4). Here, Christy Christensen can testify about her

14 familiarity with Green Tree's business records and policies and procedures, but she has no

15 personal knowledge to testify about her interpretation of proferred documents created and

16 produced by a title insurance company. There is no testimony that Ms. Christensen took part in

17 any of the actions that were involved in title insurance for this property and she did not establish

18 any foundation for her statements. She does not even say that she proferred a review of the

19 records indicating that the title insurance company would not insure this loan modification

20 wihthout the removal of the tax liens. Additionally, she admits in deposition testimony that there

21 is no information about a Grade B report in Green Tree's policy and procedures. See Fig Decl.,

at ¶ 5, Ex. 3, Deposition Transcript of Christy Christensen ("Christensen Depo.), 118:25 – 119:8, Ex. 11. Thus, her testimony concerning the January 16, 2015 title report and the assertion that tax lien encumbrances must be removed before title insurance could be issued is hearsay.

Thus, Michael Thomas moves to strike the following statements offered by Christy Christensen:

- Chrstensen Decl. at ¶ 13, lines 18-20;

Ms. Christensen's declaration has also failed to make a showing that the First American Title Report is a business record of Green Tree. She has made no showing that the record was made at or near the time by – or from information transmitted by - someone with knowledge, and that the records were created in the ordinary course of business,. Fed.R.Evid. 803(6). The court should allow the document to speak for itself.

## VI.   <u>CONCLUSION</u>

Green Tree's Motion for Summary Judgment is based on omissions and misstatements of fact, and misstatements of the law, that together cannot disguise the fact that all of the Plaintiff's claims are sufficiently pleaded, with disputed facts at issue and ripe for trial.  Green Tree disputes the existence of a contract when there is clearly an offer to enter a modification agreement, acceptance by the Plaintiff, and consideration that it retained even after disavowing the contract.  Green Tree continues to conveniently ignore the existence of prior title reports containing the very information they claim justifies breaching the modification agreement, which they were in possession of for approximately a year before finally informing the borrower that his modification was denied due to the existence of junior liens on title.  Green Tree misled the

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE- 22

Plaintiff about not only about the information in their possession, but also about the necessity of clearing junior liens before they could offer a permanent loan modification.  This information was not only misleading to the Plaintiff, but likey to other Washington consumers.  For all of the above reasons, the Plaintiff herby asks that the Court enter an Order denying the Defendant's Motion for Summary Judgment in it's entirety.

| HENRY, DEGRAAFF & MCCORMICK, PS | HENRY, DEGRAAFF & MCCORMICK, PS |
|---|---|
| By:  _/s/ Christina L Henry_____<br>Christina L Henry, WSBA# 31273<br>Attorneys for Plaintiffs | By:  _/s/ Jacob D. DeGraaff_<br>Jacob D. DeGraaff, WSBA# 36713<br>Attorneys for Plaintiffs |

HENRY, DEGRAAFF & MCCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609

1

2

## CERTIFICATE OF SERVICE

THE UNDERSIGNED certifies:

    1. My name is Christina L. Henry. I am a citizen of Snohomish County, state of Washington, over the age of eighteen (18) years and not a party to this action.

    2. On June 5, 2017, I caused to be delivered electronically, via the court's ecf system, a copy of: PLAINTIFFS' RESPONSE TO GREEN TREE SERVICING LLC'S MOTIONS FOR SUMMARY JUDGMENT AND REQUEST TO STRIKE, to the interested parties of record, addressed as follows:

Christina Latta Henry chenry@HDM-legal.com , hdmecf@gmail.com , mainline@hdm-legal.com

Jacob Daniel DeGraaff mainline@hdm-legal.com, hdmecf@gmail.com

Laurie R. Hager    laurie@sussmanshank.com, karen@sussmanshank.com

William G Fig    wfig@sussmanshank.com, kmuir@sussmanshank.com

I SWEAR UNDER PENALTY OF PERJURY that the foregoing is true and correct to the best of my knowledge, information, and belief.

/s/ *Christina L. Henry*

PLAINTIFFS' RESPONSE TO GREEN TREE'S MOTION
FOR SUMMARY JUDGMENT AND REQUEST TO
STRIKE- 24

HENRY, DeGRAAFF & McCORMICK, P.S.
1833 N 105TH ST. STE 203
SEATTLE, WASHINGTON  98133
telephone (206) 330-0595
fax (206) 400-7609